**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JAMIE LAWRENCE-EVOY,

                                CASE NO. 5:19-cv-11855

        *Plaintiff*,          DISTRICT JUDGE JUDITH E. LEVY

*v.*                          MAGISTRATE JUDGE PATRICIA T. MORRIS

COMMISSIONER OF SOCIAL SECURITY,

        *Defendant.*

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF No. 10, 12)**

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports Defendant Commissioner of Social Security's determination that Plaintiff Jamie Lawrence-Evoy is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment, (ECF No. 10), be **DENIED**, and the Commissioner's Motion, (ECF No. 12), be **GRANTED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B) and E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, the present case was referred to the undersigned Magistrate Judge to review the final decision of the Commissioner denying Plaintiff's claim for Title II Disability Insurance Benefits (DIB) and protectively filed claim for Title XVI Supplemental Income Security Benefits (SSI). (ECF No. 6.) This case is before the Court upon the parties' cross-

1

motions for summary judgment. (ECF No. 10, 12.)

Plaintiff filed applications for DIB and SSI benefits on March 25, 2016, alleging that her disability began on July 3, 2010. (ECF No. 6 at PageID.344, 346.) The Commissioner denied the claim. (*Id.* at PageID.252.) Plaintiff requested a hearing before an ALJ on August 17, 2016, and a hearing was held on April 5, 2018. (*Id.* at PageID.152, 272.) On the date of the hearing, Plaintiff amended the onset date of her disability to March 24, 2014. (*Id*. at PageID.365.) The ALJ issued a decision on August 9, 2018, finding that Plaintiff was not under a disability within the meaning of the Social Security Act. (*Id.* at PageID.135.)

After the ALJ's decision, but prior to the Appeal's Council determination, Plaintiff submitted additional evidence. (*Id.* at PageID.13-106.) The Appeals Council denied review of the ALJ's decision, (*Id*. at PageID.25), and Plaintiff subsequently filed a complaint seeking judicial review of the ALJ's final decision on June 24, 2019. (ECF No. 1.) She then filed the present Motion for Summary Judgment on October 2, 2019, (ECF No. 10), after which the Commissioner countered with its own Motion on November 12, 2019. (ECF No. 12.) Plaintiff filed a Reply to the Commissioner's Motion on November 19, 2019. (ECF No.13.)

### B.    Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v.*

*Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* at 286 (internal citations omitted).

## C.     Framework for Disability Determinations

Disability benefits are available only to those with a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. § 1382c(a)(3)(A). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If

3

you are doing substantial gainful activity, we will find that you are not disabled.

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The claimant must provide evidence establishing the residual functional capacity, which "is the most [the claimant] can still do despite [his or] her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

4

The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.    ALJ Findings

Following the five-step sequential analysis, the ALJ determined that Plaintiff was not disabled. (ECF No. 6 at PageID.134-144.) At step one, the ALJ found that Plaintiff met the insured status requirements through December 31, 2015, and that she had not engaged in substantial gainful activity since her alleged onset date of March 24, 2014. (*Id.* at PageID.137.) At step two, the ALJ concluded that Plaintiff had the following severe impairments: multiple sclerosis, chronic fatigue, migraines, and mood disorder. (*Id.*) The ALJ also decided, however, that these impairments did not meet or medically equal a listed impairment at step three. (*Id.* at PageID.137-138.) Next, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform

> sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except: for every 30 minutes sitting standing or walking, the claimant will need to change position and will be off task no more than 10% of the work day. The claimant can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, and crouch, but never crawl. The claimant can frequently feel with the right dominant upper extremity and frequently overhead reach, handle, and finger, push and pull. The claimant can never be exposed to extreme heat nor cold, and never be exposed to hazards, such as unprotected heights or unguarded or unprotected moving mechanical parts. The claimant requires the use of sunglasses in the work environment. The claimant can understand, remember,

5

and carry out simple instructions and make simple work[-]related decisions.
(*Id.* at PageID.138-139.) At step four, the ALJ found that Plaintiff could not perform any past relevant work. (*Id.* at PageID.142.) At step five, the ALJ found that Plaintiff could perform a limited range of sedentary work and that jobs existed in significant numbers in the national economy that Plaintiff could perform. (*Id.* at PageID.142-143.) This finding relied on the testimony of the Vocational Expert (VE) about potential positions including microfilm document preparer, Dictionary of Occupational Titles (DOT) code number 249.587-018, telephone quotation clerk, DOT code number 237.367-046, and inspector, DOT code number 739.687-182. (*Id.* at PageID.143.)

### E. Administrative Hearing

#### 1. Plaintiff's Testimony

At the hearing held on April 5, 2018, Plaintiff testified that for many years, she worked for the U.S. Department of Agriculture as a veterinary technician. (ECF No. 6 at PageID.158.) This work included "handling heavy gates, moving cattle," "assisting a veterinarian with testing cattle," and regularly lifting objects weighing 50 to 100 pounds (*Id.* at PageID.158-159.) Plaintiff explained that she was on her feet for approximately four to six hours a day and drove a vehicle for approximately two to four hours a day in her previous position. (*Id.* at PageID.158.) Plaintiff was never certified or licensed as a veterinary technician but was hired based on her experience with large animals. (*Id.* at PageID.159).

Plaintiff testified that she was first diagnosed with multiple sclerosis in 2006. (*Id.*) Her symptoms, at first, included blurry vision, which would worsen when she got a

headache (*Id.* at PageID.159-160.) Around 2014 to 2015, the pain from Plaintiff's headaches was "very sharp" and "painful," and would last anywhere between a few hours and the entire day. (*Id.* at PageID.160.) Sometimes Plaintiff would have to nap all day to relieve her headache, and in 2015, she was experiencing headaches almost every day. (*Id.*) Plaintiff testified that after she began taking medication for the headaches, she would only experience them two to three times a week; still, when a "bad" headache would occur, it was difficult for Plaintiff to concentrate for more than "a few minutes." (*Id.* at PageID.161-162.) Plaintiff further testified that on a "bad day" she could do very little, limited to making sure her son, who was 12 years old, was awake, off to school, and had what he needed. (*Id.* at PageID.162.) Plaintiff testified that she sometimes wears sunglasses to decrease her sensitivity to light, which could intensify or trigger her headaches. (*Id.* at PageID.170.)

Plaintiff also testified that she experiences muscle spasms, which she described as feeling as though all her muscles were knotted up, "very painful," and often happened at the same time as her headaches. (*Id*. at PageID.164.) Plaintiff testified that she took muscle relaxers daily and believed she would be absent from work at least four days per month due to her headaches and fatigue. (*Id*. at PageID.165.)

One of Plaintiff's hobbies is horseback riding. (*Id.* at PageID.163.) She continued to ride horses after her multiple sclerosis diagnosis and testified that she found riding to be therapeutic. (*Id.* at PageID.163.)  Plaintiff testified that her mother, who helped Plaintiff with many things, would often accompany her on horseback rides for approximately one hour, although Plaintiff would sometimes be too tired to take care of the horse after their

ride. (*Id*. at PageID.164.) The ALJ asked Plaintiff several questions about her horseback riding. (*Id*. at PageID.168.) Plaintiff testified that she owns two large horses and her son helps with the care and maintenance of the horses, which includes providing bales of hay in the winter. (*Id*.) Plaintiff can saddle a horse on "some days." (*Id*.)

Plaintiff also testified that, on the day before the administrative hearing, she went grocery shopping with her mother. (*Id*. at PageID.165-166.) Plaintiff testified that she takes care of her own personal needs and can do chores around the house, although she testified that she does them at her own pace. (*Id*. at PageID.166.) On a "bad day," Plaintiff is able to do very little, but could still make sure dinner is prepared. (*Id*. at PageID.166-167.) Plaintiff can drive and does not have any limitations on driving. (*Id*. at PageID.173). The ALJ noted that although Plaintiff was diagnosed in 2006, she worked until 2010; Plaintiff clarified that she stopped working because of layoffs, and not due to medical reasons. (*Id*. at PageID.169.)

### 2. The VE's Testimony

The ALJ then asked the VE to consider a hypothetical individual with Plaintiff's

age, education, and past work experience. This individual [could] work at the light exertion level. Except for every 30 minutes standing, walking, or sitting, this person would need to change position, and will be off task no more than 10% of the workday. This person can occasionally climb ramps and stairs. Never ladders, ropes, or scaffolds. This person can occasionally balance, stoop, kneel, and crouch, but never crawl. This person can frequently feel with the right dominant upper extremity. This person can never be exposed to hazards such as unprotected heights, or unguarded, or unprotected moving mechanical parts.

(ECF No. 6 at PageID.175-176.) When asked whether such a person could perform Plaintiff's past relevant work, the VE indicated that he or she could not. (*Id*. at PageID.176.)

8

The VE further testified that such a person could, however, perform other jobs in the national economy such as information clerk, DOT 237.367-018, light work (56,000 jobs); office helper, DOT 239.567-010, light work (113,000 jobs); and routing clerk, DOT 222.687-022, light work (59,000 jobs). (*Id.* at PageID.176-177.) The VE noted, regarding the ALJ's hypothetical, that the DOT does not specify employment by changing positions, sitting, walking, or standing every 30 minutes. (*Id*. at PageID.176.) The VE further noted that the DOT does not define "feeling" by "right, or left, or dominant, or non-dominant upper extremity" as suggested in the ALJ's hypothetical. (*Id*.)

The ALJ then posed a second hypothetical, with the same information as the first, except that "this individual can only perform work at the sedentary level." (*Id.* at PageID.177.) The VE responded that such a person could perform the following jobs that were available in the national economy: microfilm document preparer, DOT 249.587-018, SVP 2, sedentary work (61,000 jobs); telephone quotation clerk, DOT 237.367-046, SVP 2, sedentary work (56,000 jobs); and sedentary inspector, DOT 739.687-182, SVP 2, sedentary work (10,000 jobs). (*Id.* at PageID.177-178.)

The ALJ then posed a third hypothetical, assuming the same information as previously offered, except that this individual "required the use of sunglasses in the work environment." (*Id*. at PageID.178.) The VE responded that "the DOT [] does not address something like sunglasses in the workplace[,]" but concluded that the use of sunglasses would not impact any of the offered positions. (*Id*.)

In a fourth hypothetical, the ALJ posed an individual, with the same information as previously provided, but who "can frequently overhead reach, handle, finger, and feel. Can

push and pull bilaterally. This person can never be exposed to extreme cold or extreme heat." (*Id.*) The VE responded that the previously offered positions would be suitable, but noted that the DOT does not specify movements by right or left. (*Id.* at PageID.179.)

Finally, in a fifth hypothetical, the ALJ posed a hypothetical individual, with the same information as previously provided, but who "would be off task 20% of the workday." (*Id.* at PageID.180.) The VE responded that such a person would be precluded from work because of the amount of time off-task. (*Id.*) In response to questions by Plaintiff's counsel, the VE testified that if a person was required to take "a break during each workday at unpredictable times to take a nap," that person could not maintain competitive employment. (*Id.* at PageID.181.) Finally, the ALJ asked whether each hypothetical individual previously posed could "understand, remember, and carry out simple instructions, and make simple work-related decisions," and whether the positions offered would change based on the VE's answer. (*Id.* at PageID.183.) The VE replied that the provided jobs were "typically thought of as simple, routine, and repetitive work[,]" and the responses would not be changed by the ALJ's additional hypothetical trait. (*Id.*)

## F.    Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations[1] carve the evidence into categories:

---

[1] Various amendments have been made to the regulations since Plaintiff filed her claim. *See, e.g.*, Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (January 18, 2017) (effective March 27, 2017). Because the changes do not alter the outcome here—and, relatedly, they do not appear to exercise an impermissible retroactive effect on Plaintiff's rights, as the amendments are largely procedural changes in the process for analyzing evidence, *cf. Combs v Comm'r of Soc. Sec.*, 459 F.3d 640, 647 (6th Cir. 2006)—and the parties do not discuss them, it is unnecessary to determine whether they apply. Therefore, like many other courts, I will utilize the regulations in effect when Plaintiff filed her claim and

"acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513 (2016). "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* at § 404.1513(a) (2016). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* at § 404.1513(d) (2016). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* at § 404.1527(d).

---

the case was decided by the ALJ, along with the new regulations that explicitly apply to claims during this period. *See, e.g.*, 20 C.F.R. § 404.1527; *see generally* Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 Fed Reg. 62560, 62578 (September 9, 2016); *see also Rodriguez v. Colvin*, 3:15CV1723, 2018 WL 4204436, at *4 n. 6 (D. Conn. 2018) ("[T]he Court reviews the ALJ's decision under the earlier regulations because the plaintiff's application was filed before the new regulations went into effect." (citing *Maloney v. Berryhill*, No. 16-cv-3899, 2018 WL 400772, at *1 (E.D. N.Y. 2018) (same))); *Miller v. Comm'r of Soc. Sec.*, No. 1:17CV0718, 2018 2773372, at *5 n. 3 (N.D. Ohio 2018) ("Plaintiff's claim was filed before March 27, 2017, and the ALJ's decision was rendered before the new regulations took effect. For the sake of consistency, the court continues to cite the language from the former regulations that were in effect at the time of the ALJ's decision."), *Rep. & Rec. adopted by* 2018 WL 2766020 (N.D. Ohio 2018); *Woodall v. Berryhill*, No. 1:17-cv-01289, 2018 WL 3133442, at *7 n. 3 (N.D. Ohio 2018) (applying the rules effective when the claimant applied for benefits), *Rep. & Rec. adopted by* 2018 WL 3126552 (N.D. Ohio 2018); *Meeks v. Comm'r of Soc. Sec.*, No. 4:17-cv-45, 2018 WL 1952529, at *4 n. 2 (E.D. Tenn. 2018) (applying the rules effective when the ALJ decided the case).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. *Id*. at § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Because Plaintiff filed her claim before March 27, 2017, she is entitled to the benefit of the treating-source rule.  Under that rule, certain opinions from her treating physicians can receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(c)(2). The ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d). Thus, the ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight

12

assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits must give specific reasons, supported by record evidence, for the weight granted to a treating source's opinion. *Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

An ALJ must also analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in SSR 96-7p, 1996 WL 374186 (July 2, 1996).[2] Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir.1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating

---

[2] Although the Commissioner has rescinded SSR 96-7p and eliminated the term "credibility" from Administration policy, SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016), the underlying regulation has remained materially unchanged, *see* 20. C.F.R. § 404.1529(c), and I agree with the courts in this District that have continued to apply SSR 96-7p to cases arising prior to its rescission. *See, e.g., Cooper v. Comm'r of Soc. Sec.*, No. 16-cv-13477, 2017 WL 3923984, at *3 (E.D. Mich. August 21, 2017), *Rep. & Rec. adopted by* 2017 WL 3891971 (E.D. Mich. Sept. 9, 2017); *Tuttle v. Comm'r of Soc. Sec.*, No. 16-11144, 2017 WL 2928021, at *6 n. 3 (E.D. Mich. June 9, 2017), *Rep. & Rec. adopted by* 2017 WL 2905125 (E.D. Mich. July 7, 2017).

subjective symptoms, including pain. 20 C.F.R. § 404.1529(a) (2016); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529 (2016); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments will "not alone establish that [he or she is] disabled." 20 C.F.R. § 404.1529(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). Instead, the absence of objective, confirming evidence forces the ALJ to consider the following factors:

(i)    [D]aily activities;
(ii)   The location, duration, frequency, and intensity of . . . pain;
(iii)  Precipitating and aggravating factors;
(iv)  The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
(v)   Treatment, other than medication, . . . received for relief of . . . pain;
(vi)  Any measures . . . used to relieve . . . pain.

14

20 C.F.R.§ 404.1529(c)(3) (2016); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996). Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996).

### G.    Arguments and Analysis

Throughout her Motion, Plaintiff advances two arguments in support of her conclusion that substantial evidence does not support the ALJ's decision. The first is that the ALJ improperly assigned partial weight to the medical opinion of Topaz Holloway, a doctor of nursing practice (DNP). The second is that the ALJ improperly evaluated Plaintiff's residual functional capacity (RFC) by failing to consider her subjective complaints of pain and her headaches.

As an initial matter, Plaintiff submitted additional evidence to the Appeals Council, after the ALJ's determination, and thus the evidence was not reviewed by the ALJ. This evidence, therefore, is not considered by this court because the evidence was not submitted to, or considered by, the ALJ. *See Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 261-262 (6th Cir. 2015). The following analysis relies upon the evidence considered by the ALJ.

### 1.    Holloway's Medical Opinion – Partial Weight

Plaintiff argues that the ALJ "provides no analysis in the decision regarding how [] [P]laintiff can sustain an ordinary wok routine without being off task or absent or without requiring the necessary breaks documented by [nurse practitioner], Topaz Holloway." (ECF No. 10 at PageID.818.) The thrust of Plaintiff's first argument is that the ALJ failed

to properly weigh the opinion of Topaz Holloway, who is a DNP. (*Id*. at PageID.818-819, 826-827.)

The ALJ noted that Holloway opined Plaintiff would be absent from work about four days a month. (*Id*.) But the ALJ ultimately determined that "[s]tatements that a claimant is 'disabled,' 'unable to work,' . . . are not medical opinions but are administrative findings dispositive of a case . . . . Such issues are reserved to the Commissioner[.]" (*Id*.) The ALJ gave partial weight to Holloway's opinion. (*Id*. at PageID.141.) Ultimately, despite Holloway's opinion and based on the existing medical evidence, the ALJ found that Plaintiff's medical examinations consistently demonstrated "essentially normal mental status examinations throughout the record . . . benign findings including normal mood and affect, normal attention span and concentration, cooperation, and alertness []." (ECF No. 6 at PageID.140.)

The ALJ did not err in granting only partial weight to Holloway's opinion; as a DNP, and as the Commissioner points out in its Motion, she is not an "acceptable medical source" pursuant to the regulations. (ECF No. 12 at PageID.841.) *See Sanders v Comm'r of Soc. Sec.*, No. 16-13952, 2018 WL 2181096, at *4 (E.D. Mich. Jan. 23, 2018), *Rep. & Rec. adopted by* 2018 WL 1531595 (E.D. Mich. Mar. 29, 2018) ("[D]octors of nursing practice are not 'acceptable medical sources' under the [r]egulations[.]") The ALJ's determination was ultimately supported by other medical evidence in the record derived from "acceptable medical sources." These sources included evidence of an examination by Sunita Tummala, M.D., which provided that Plaintiff had an "essentially normal neurological examination that reflected normal reflexes, normal gait, and intact cerebellar

function." (ECF No. 6 at PageID.140.) The ALJ assigned great weight to the findings of Tummala. (*Id*. at PageID.141.) The ALJ also noted, and assigned great weight to, the findings of the agency psychological consultants, who determined that "the claimant has a mild limitation in daily functioning, no limitation in social interaction, and mild limitations in [c]oncentration, persistence, and pace []." (*Id*. at PageID.141.)

The ALJ provided "good reasons" for the limited weight assigned to Holloway, who is not a "medically acceptable source," and to Tummula, who is an acceptable source. § 404.1527(c)(2); *see also Dakroub*, 482 F.3d at 875. The ALJ's decision denying benefits offered specific reasons, supported by record evidence, for the weight granted to each treating source's opinion. *Rogers*, 486 F.3d at 242.

## 2. Plaintiff's RFC – Subjective Complaints and Headaches

Next, Plaintiff contends that the ALJ failed to properly assess her subjective symptoms and headaches. Specifically, she argues that her headaches would cause her to be off task more than 15% of the workday, and as such, she would not be able to maintain employment as the ALJ suggested. (*Id*. at PageID.827.)

Plaintiff first argues that the ALJ erred in failing to properly consider and give weight to claimant's "complaints of the intensity of her pain and headaches[.]" (ECF No. 10 at PageID.823.) Plaintiff relies on the evidence of her "continual complaints" to her physician and her testimony that she often needed help from her mother and son to drive and care for her horses. (*Id*.)  The ALJ did note that Plaintiff's medically determinable impairments could have reasonably been expected to cause her alleged symptoms (ECF No. 6 at PageID.140); but the ALJ found that claimant's statements concerning the

17

"intensity, persistence and limiting effects" of her alleged symptoms were not entirely consistent with the medical and other evidence in the record. (*Id*.)

The ALJ elaborated that the evidence of Plaintiff's medical record established "essentially normal physical examinations throughout," and noted specifically Plaintiff's electroencephalogram test results and results of other diagnostic tests. (*Id*.) The ALJ noted test results indicating Plaintiff's normal sensation, reflexes, and coordination, as well as muscle strength and tone. (*Id*. at PageID.140.) Further, the ALJ relied on results indicating Plaintiff's "normal pupils, conjugated and full extraocular movements, 5/5 motor strength, normal gait and stance, stability, and progress with treatment, suggesting that treatment was at least somewhat effective." (*Id*.)

The ALJ recognized that some of the examinations did note Plaintiff's "decrease[d] range of motion in the cervical spine, decreased sensation to light, and spastic gait" (*Id*.); however, those presentations of symptoms were "abnormal" in light of the entire record of examinations, and where they did appear, they were "offset by generally benign presentations noted elsewhere in the record and by evidence of effective treatment []." (*Id*.)

Finally, the ALJ explicitly considered Plaintiff's allegations, as well as the opinion evidence of her mother, in its determination when it concluded

> [t]he observations of such layperson(s) certainly do not outweigh the accumulated medical evidence regarding the extent to which the claimant's limitations can reasonably be considered severe. Ultimately, [Plaintiff's mother's opinion is] unpersuasive for the same reason that the claimant's own allegations do not fully persuade the undersigned, observing that they lack substantial support from objective findings in the record.

(*Id*. at PageID.141.) Again, while "objective evidence of the pain itself" is not

18

required, *Duncan*, 801 F.2d at 853, a claimant's description of her physical or mental impairments will "not alone establish that [he or she is] disabled." 20 C.F.R. § 404.1529(a).

In addition, Plaintiff argues that the ALJ erred by not properly considering her headaches, arguing that the ALJ did not specifically mention Plaintiff's migraines in its decision. (ECF No. 10 at PageID.823.) However, the ALJ did in fact acknowledge and consider Plaintiff's complaints of headaches, finding and listing "migraines" as one of Plaintiff's severe impairments. (ECF No. 6 at PageID.137.) The ALJ decided, however, that the impairments, including the migraines, did not meet or medically equal a listed impairment. (*Id.* at PageID.137-138.) Plaintiff's arguments do not undermine the ALJ's assessments. Although Plaintiff argues that the ALJ's determination did not properly consider her subjective complaints and headaches, the ALJ properly assessed all the medical evidence and made specific findings that are supported by substantial evidence.

Giving appropriate weight to the respective treating sources, and to all of the evidence in the record, the ALJ found that although Plaintiff may suffer from "fatigue, drowsiness, and lightheadedness," and even "in light of moderate limitations in concentrating, persisting, or maintaining pace," her RFC was only limited to "simple work making simple work related decision." (ECF No. 6 at PageID.141.) Thus, the ALJ's conclusion was supported by substantial evidence, or, "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241.

### H.    Conclusion

For these reasons, I conclude that substantial evidence does support the ALJ's

decision. Consequently, I recommend **DENYING** Plaintiff's Motion, (ECF No. 10), and **GRANTING** the Commissioner's Motion. (ECF No. 12).

## III.   REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1,"

"Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  April 24, 2020                S/ PATRICIA T. MORRIS
                                     Patricia T. Morris
                                     United States Magistrate Judge

## **CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: April 24, 2020                By s/Kristen Castaneda
                                     Case Manager